```
IN THE UNITED STATES DISTRICT COURT FOR THE
            EASTERN DISTRICT OF OKLAHOMA

PAUL DORSEY,                      )
                                  )
            Plaintiff,            )
                                  )
v.                                )   Case No. CIV-13-332-RAW-KEW
                                  )
CAROLYN W. COLVIN, Acting         )
Commissioner of Social            )
Security Administration,          )
                                  )
            Defendant.            )
```

### REPORT AND RECOMMENDATION

Plaintiff Paul Dorsey (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ."  42 U.S.C. §423(d)(2)(A).  Social Security regulations implement a five-step sequential process to evaluate a disability claim.  *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).  This Court's review is limited to two inquiries:  first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910.  Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  20 C.F.R. §§ 404.1521, 416.921.  If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied.  At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry.  If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work.  If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform.  Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work.  *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on June 22, 1956 and was 55 years old at the time of the ALJ's decision. Claimant completed his high school education. Claimant has worked in the past as a truck driver and limo driver. Claimant alleges an inability to work beginning October 24, 2009 due to limitations resulting from HIV, depression, arthritis, and low back pain due to degenerative disc disease and

3

scoliosis.

## Procedural History

On December 9, 2009, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. An administrative hearing was conducted by Administrative Law Judge Osly Deramus ("ALJ") on June 23, 2011 in McAlester, Oklahoma. The ALJ issued an unfavorable decision on August 29, 2011. On July 1, 2013, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he retained the RFC to perform less than a full range of medium work.

## Error Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to properly consider the opinions of Claimant's treating physician and consultative examining physicians; (2) reaching an unsupported RFC;

(3) improperly assessing Claimant's credibility; and (4) failing to fully develop the record.

**Consideration of the Opinion Evidence**

In his decision, the ALJ determined Claimant suffered from the severe impairments of HIV and depression. (Tr. 16). He concluded that Claimant retained the RFC to perform less than a full range of medium work. In so doing, the ALJ found Claimant could occasionally lift/carry 50 pounds and frequently lift/carry 25 pounds, stand/walk for about 6 hours in an 8 hour workday, sit for about 6 hours in an 8 hour workday. Due to psychologically based factors, the ALJ stated in his decision that Claimant had "some limitations" but was able to perform simple and some complex tasks, could relate to others on a superficial work basis, and could adapt to a work situation. (Tr. 19). After consultation with a vocational expert, the ALJ determined Claimant could perform the representative jobs of warehouse worker, bench assembler, and clerical mailer, all of which the vocational expert testified existed in sufficient numbers in the regional and national economies. (Tr. 25). Based upon these findings, the ALJ concluded Claimant was not disabled from October 24, 2009 through the date of the decision. (Tr. 25-26).

Claimant contends the ALJ failed to properly evaluate the opinions of his treating physician and consultative examiners. On

April 5, 2011, Dr. Joseph Hassey, a physician who had treated Claimant from 1996 through 2009, authored a Medical Source Statement of Ability to Do Work-Related Activities (Physical) on Claimant. In a narrative statement, Dr. Hassey diagnosed Claimant with HIV/AIDS, depression, bronchitis, and asthma. He opined that "[Claimant] is disabled & unable to work as a result of his illness." He checked various boxes on the form in which he found (1) Claimant would sometimes need to take unscheduled breaks during an 8 hour working shift; (2) Claimant would sometimes need to lie down at unpredictable times to rest; (3) Claimant's symptoms and pain were severe enough to interfere with attention and concentration; (4) Claimant's symptoms and pain were severe enough to affect his ability to tolerate work stress; (5) on average, Claimant would be required to be absent from work as a result of his impairments or treatments about 4 days per month; (6) Claimant would need to elevate his feet periodically during the day; (7) Claimant would need a sit/stand/walk option at will if employed; and (8) Claimant would experience fatigue. (Tr. 584).

In his decision, the ALJ acknowledged Dr. Hassey's opinion and treating relationship with Claimant. The ALJ gave Dr. Hassey's opinions "little weight" because his finding of disability was not entitled to any special significance, his findings were not

6

supported by the medical evidence including Dr. Hassey's treatment notes, and Dr. Hassey last saw Claimant in May of 2009 and, therefore, would lack knowledge of Claimant's condition in April of 2011 when he offered his opinion. (Tr. 22).

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;

7

(3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

The ALJ first rejected Dr. Hassey's opinion because his opinion on disability invaded the purview of Defendant. A statement by a medical source that a claimant is "disabled" is not a "medical opinion," but is an "opinion [ ] on issues reserved to the Commissioner" and does not compel a finding of disability. 20 C.F.R. § 404.1527(e) & (e)(1). Findings relating to disability are reserved to the Commissioner and "even when offered by a treating

source, they can never be entitled to controlling weight or given special significance." Soc. Sec. R. 96–5p. The ALJ did not err in rejecting Dr. Hassey's opinion on disability.

The ALJ also found Dr. Hassey's Statement was not supported by medical evidence, including his own treatment notes. Claimant does not direct this Court to any specific evidence in the record which supports Dr. Hassey's restrictions. On May 29, 2008, Dr. Hassey noted Claimant's CD4 count in 2004 was 175 which warranted a finding that Claimant suffered from HIV/AIDS. (Tr. 281). Claimant's CD4 count was up to 372 in March of 2008. (Tr. 289).

On May 12, 2009, Dr. Hassey found Claimant's HIV infection to be "well controlled." Claimant's extremities revealed no evidence of clubbing, cyanosis, or edema with no joint swelling or rashes and no palpable lymphadenopathy. All told, Claimant's physical examination was "unremarkable." (Tr. 279). Thereafter, Dr. Hassey did not treat Claimant during the relevant period of adjudication beginning October 24, 2009 and had not treated Claimant for about two years prior to completing the Medical Source Statement. Applying the Watkins factors, this Court finds the ALJ's decision to give Dr. Hassey's opinion on functional limitations "little weight" to be well-supported by the medical record.

Claimant also contends the ALJ should have given additional

9

weight to the opinions of two consultative examining physicians, Dr. Mohammed Quadeer and Dr. Patricia Walz. Dr. Quadeer examined Claimant on April 8, 2010. After a careful reading of Dr. Quadeer's report from the examination, Claimant and the ALJ have misinterpreted Dr. Quadeer's alleged finding of disability. While it is admittedly ambiguous, Dr. Quadeer states in the "History of Present Illness" section of his report that Claimant "is in therapy for depression. In this doctor's opinion, the patient is not able to work now." (Tr. 419). It is apparent that Dr. Quadeer was regurgitating Claimant's history as it was being given to him by Claimant and included Claimant's statement that the therapy doctor had determined Claimant was not able to work - not Dr. Quadeer. The remainder of his report does not include the type of findings which would support such a stark finding. Dr. Quadeer's musculoskeletal examination showed little restriction except that the lumbar-sacral spine was tender at L4-L5 with limited range of motion associated with muscle spasms. Claimant was also found to be suffering from depression, although Dr. Quadeer also found Claimant awake, alert, and oriented x 3, memories were intact, speech was 100% intelligible, and Claimant's thought processes appeared normal. (Tr. 421). As with Dr. Hassey, even if the ALJ's and Claimant's interpretation of the statement on disability are attributed to Dr.

Quadeer, his statement on an issue reserved to the Commissioner is not entitled to weight. The ALJ did not err in affording Dr. Quadeer's opinion on disability, if he was indeed offering one, to little weight.

On May 11, 2010, Dr. Patricia Walz performed a mental evaluation on Claimant. She diagnosed Claimant with major depression, recurrent, moderate to severe without psychosis, dependent traits and a GAF of 45-50. (Tr. 439). The ALJ acknowledged the GAF finding in his decision but also noted that the Veterans Administration had assessed a GAF of 62. (Tr. 22). He concluded that an isolated GAF score has little probative value and discounted it in his evaluation. Id. Without doubt, a low GAF is not conclusive on the issue of whether a claimant is unable to perform the necessary functions of employment. "The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning." Langley v. Barnhart, 373 F.3d 1116, 1122 n. 3 (10th Cir. 2004). The Tenth Circuit through a series of unpublished decisions has made it clear that the failure to discuss a GAF alone is insufficient to reverse an ALJ's determination of non-disability. *See*, Lee v. Barnhart, 2004 WL 2810224, 3 (10th Cir. (Okla.)); Eden v. Barnhart, 2004 WL 2051382, 2 (10th Cir. (Okla.)); Lopez v.

Barnhart, 2003 WL 22351956, 2 (10th Cir. (N.M.)). The foundation for this statement is the possibility that the resulting impairment may only relate to the claimant's social rather than occupational sphere. Lee, *supra* at 3. In light of the other evidence in the record, this Court does not find the ALJ erred in his assessment of Dr. Walz's opinion, generally, nor in his failure to accept the GAF she determined, specifically.

**RFC Determination**

Claimant contends the ALJ's RFC is not supported by substantial evidence. Essentially, Claimant argues that the RFC would be unsupported if the ALJ had properly considered the three physicians' opinions discussed in the argument above, including the GAF scores found by Dr. Walz. As this Court found no error in the weighing of these opinions, this Court finds no error in the ALJ's RFC assessment.

Claimant takes issue with the ALJ's use of the term "some" complex tasks in his RFC findings as it pertains to the questioning of the vocational expert. This Court finds that the RFC finding is sufficiently specific.

Claimant also asserts the ALJ overlooked the side effects of his medication for HIV. Dr. Hassey had found that the medication had redistributed his body fat and Claimant believed the medication

aggravated his depression and caused him fatigue. (Tr. 45). The ALJ acknowledged side effects from the medication in his decision but found that Claimant's statements were not credible. (Tr. 19-21). This Court finds no error in the ALJ's overall RFC assessment.

**Credibility Determination**

The ALJ did state in his opinion that Claimant's impairments could reasonably be expected to cause the alleged symptoms but discounted Claimant's credibility as to the intensity, persistence, and limiting effects of these symptoms "to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 20). This Court has on several occasions found this latter statement to be an erroneous statement of the proper order of analysis - a claimant's credibility should be assessed before not after the RFC evaluation. This finding, however, alone will not result in reversal if the credibility findings are supported by substantial evidence.

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.

13

Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

The ALJ proceeded through the objective medical evidence which contradicted Claimant's subjective testimony as well as the various factors required for a credibility assessment. (Tr. 16-24). These factors include Claimant's medication regimen and medically unsupported subjective beliefs on their side effects as well as the objective medical findings on his limited restrictions on movement in the medical record. (Tr. 20-21). The ALJ also extensively discussed Claimant's activities of daily living, including

14

Claimant's work around the house and his ability to complete medical billing and coding school. (Tr. 18-21). This Court concludes the ALJ did not err in his credibility assessment and sufficiently linked the objective evidence to his credibility findings.

**Duty to Develop the Record**

Claimant contends the ALJ should have ordered a consultative mental examination and/or requested further information from Claimant's physicians, including requesting Dr. Hassey to clarify his Medical Source Statement. Generally, the burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability. Branam v. Barnhart, 385 F.3d 1268, 1271 (10th Cir. 2004) citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987). A social security disability hearing is nonadversarial, however, and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." Id. quoting Henrie v. United States Dep't of Health & Human Services, 13 F.3d 359, 360-61 (10th Cir. 1993). As a result, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." Id. quoting Carter v. Chater, 73 F.3d 1019, 1022 (10th Cir. 1996). This duty

15

exists even when a claimant is represented by counsel. Baca v. Dept. of Health & Human Services, 5 F.3d 476, 480 (10th Cir. 1993). The court, however, is not required to act as a claimant's advocate. Henrie, 13 F.3d at 361.

The duty to develop the record extends to ordering consultative examinations and testing where required. Consultative examinations are used to "secure needed medical evidence the file does not contain such as clinical findings, laboratory tests, a diagnosis or prognosis necessary for decision." 20 C.F.R. § 416.919a(2). Normally, a consultative examination is required if

> (1) The additional evidence needed is not contained in the records of your medical sources;
> 
> (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, . . .
> 
> (3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources;
> 
> (4) A conflict, inconsistency, ambiguity or insufficiency in the evidence mus be resolved, and we are unable to do so by recontacting your medical source; or
> 
> (5) There is an indication of a change in your condition that is likely to affect your ability to work.
> 
> 20 C.F.R. § 416.909a(2)(b).

None of these bases for ordering a consultative examination

16

exists in the record. The ALJ did not violate his duty to develop the record by not ordering further medical evaluations.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**.

The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 5th day of March, 2015.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE